UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| JABBAR FAZELI, MD & MAINE GERIATRICS, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>NORTHBRIDGE STROUDWATER LODGE II, LLC; NORTHBRIDGE STROUDWATER ASSISTED LIVING, LLC d/b/a STROUDWATER LODGE; NORTHBRIDGE AVITA STROUDWATER II, LLC; AVITA STROUDWATER LLC d/b/a AVITA OF STROUDWATER; NORTHBRIDGE AVITA WELLS II, LLC; AVITA WELLS, LLC d/b/a AVITA OF WELLS; NORTHBRIDGE COMPANIES; KATRIN FEICK, & ORLENE DEMATTEO,<br><br>　　　　Defendants. | Docket No. 2:20-cv-00350-JDL |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

**I.　PRELIMINARY STATEMENT**

　　Defendants Northbridge Stroudwater Lodge II, LLC; Northbridge Stroudwater Assisted Living, LLC, Northbridge Avita Stroudwater II, LLC, Avita Stroudwater LLC, Northbridge Avita Wells II, LLC, Avita Wells, LLC, Northbridge Companies, Katrin Feick, and Orlene DeMatteo (together, "Defendants"), submit this memorandum of law in support of their motion to dismiss the Complaint of Plaintiffs Jabbar Fazeli and Maine Geriatrics, LLC (together, "Plaintiffs").

　　In their complaint, Plaintiffs bring four claims against Defendants: I) violation of 42 U.S.C. § 1981; II) violation of the Maine Whistleblowers Protection Act; III) Defamation; and IV) Tortious Interference. For each of these counts, Plaintiffs fail to plead facts which, taken as

true, can support the claims and provide basis for relief to be granted. Pursuant to Fed. R. Civ. P. 12(b)(6) the Complaint must be dismissed.

Accordingly, for these reasons, Plaintiff's Complaint must be dismissed in its entirety.

## II.    FACTS[1]

Defendants operate assisted living facilities across the Eastern United States, including in Maine. ¶ 27. Defendants are an integrated enterprise with shared ownership, shared management, integrated operations, and centralized control of labor relations. ¶ 28. One of the facilities operated by Defendants is Avita of Stroudwater in Westbrook, Maine. ¶ 27. This facility enjoys a good reputation in the community as a top dementia care facility. ¶ 47. On March 1, 2015, Plaintiff Maine Geriatrics, LLC entered into a contract with Defendant Avita of Stroudwater, under which Maine Geriatrics would provide medical director services through its employee, Plaintiff Fazeli. ¶ 33. On April 25, 2016, similar medical services contracts were entered into between Maine Geriatrics and two more facilities: Avita of Wells and Stroudwater Lodge. ¶ 34. Even with these contracts in place, residents at Defendants' facilities have free choice of medical providers. ¶ 39.

On August 17, 2016, the Bangor Daily News reported that Fazeli's brother had become a terrorist member of the Islamic State of Iraq and Syria ("ISIS") who was fighting for ISIS in Syria. ¶ 53. This article, which Plaintiffs incorporate by reference in their Complaint, details Fazeli's connection to his brother and his reports to the Federal Bureau of Investigation on his brother's activities. [2] Exhibit A, Jackie Farwell, *Maine doctor details sense of duty in alerting FBI to brother's Islamic State ties*, Bangor Daily News, August 17, 2016. The article makes

---

[1] The "facts" are taken as true for the purpose of the Motion to Dismiss only.  Defendants reserve the right to challenge any and all factual allegations.

[2] "[C]ourts have made narrow exceptions [to the rule restricting consideration to the Complaint on a 12(b)(6) motion]…for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993).

clear Plaintiff's lack of identification with the Islamic faith. His "family wasn't particularly devout" and while his "parents prayed and fasted [they] never forced their children to." Plaintiff said that "[t]here was no emphasis on religion." The article notes explicitly that "Jabbar…is not religious." It is alleged that, on the basis of this article, Defendants based their allegedly discriminatory conduct in violation of § 1981. ¶¶ 54, 56, 182.

Plaintiff claims a series of discriminatory acts followed. In the first instance, approximately four months later, Defendants took three weeks to resolve an administrative question on how Tylenol ought to be stored. ¶¶ 58-59, 62. Next, approximately 8 months after the article, Defendants' corporate leadership did not mention Fazeli in a grand opening event at a new facility. ¶¶ 64-67. After that, Defendants' wronged Fazeli when a corporate official said only "Hi!" to him. ¶ 68 (exclamation in original). When Defendants' officials, while visiting Maine, held an *informal* gathering of their employees, they did not invite Plaintiff, who was not their employee. ¶ 69.

Plaintiffs also attribute a retaliatory quality to Fazeli not getting his way in the selection of a pharmacy provider. ¶ 70. Then, Fazeli was wronged when Defendants' made a decision to switch pharmacy providers in their own facilities without his input. ¶ 74. What was this pharmacy's particular offense against Fazeli? It received prescriptions via fax rather than Fazeli's preferred means, over the phone. ¶ 71.

Maintenance of on-site medical records was the responsibility of Defendants. ¶ 81. In spite of the fact that it was admittedly not Fazeli's responsibility, he promulgated a vaccination history recordkeeping policy contrary to Defendants' wishes and attributed retaliatory intent to Defendants' choice to "countermand" the improper policy. ¶¶ 89-91.

Next, Plaintiffs were retaliated against when a resident made their own health care decisions with which Fazeli disagreed. In 2017, Fazeli decided that Avita of Stroudwater could not meet a particular residents care needs. ¶ 96. The resident's spouse, along with Defendants, disagreed with Fazeli and arranged for medications with the hospice care provider. ¶ 99. Plaintiffs' defamation claim appears to be based upon this incident, as an employee of Defendants sent an internal email following it informing coworkers that Fazeli behaved unprofessionally and disrespectfully toward herself and other staff. ¶¶ 107-08. Plaintiffs allege two additional, essentially identical, instances of Fazeli's rage over other interested parties in a patient's care disagreeing with him. ¶¶ 127-32.

A similar incident arose when a resident's son, who was also employed by Defendants, sought to influence the care of his mother, contrary to Fazeli's personal opinions. ¶ 117. When an employee of Defendants was unwilling to limit the son's influence with the care of his mother, Fazeli reported this to the long-term care ombudsman, constituting, *inter alia*, his alleged whistleblower activity. ¶ 121.

Defendants then took steps to terminate Fazeli. ¶ 133. Defendants' employees engaged in purely internal communications amongst themselves regarding a replacement for his services. ¶ 134. Some employees of Defendants provided information to other employees in order to effectuate this termination of the contract. ¶ 139. Even before this communication, and at all times, Defendants were aware of the manner in which Fazeli and his staff provided coverage and care. ¶ 38. On October 3, 2018, Defendants gave Plaintiffs 60 days' notice that the contracts between them would be terminated. ¶ 157.

In accord with Maine law, Defendants gave residents the choice of any available doctor, including continuing with Fazeli. ¶ 160. Defendants sent a letter to residents informing them of

their options, including a statement about residents' right to any provider of their choosing. ¶ 161-62. No patients at Avita of Stroudwater and Avita of Wells chose to remain with Fazeli. ¶ 166. Only a few patients at Stroudwater Lodge elected to remain with Fazeli. *Id.* Absolutely no new residents selected Fazeli. ¶ 167. Typically, more patients would choose to remain with a provider, but virtually none exercised their right under law to remain with Fazeli. ¶ 169. In some uncertain way, Defendants violated Plaintiffs' "rights" by not affording them respect and influence. ¶ 183.

### III.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint that fails to state a claim upon which relief can be granted is subject to early dismissal.  In ruling on the motion, the trial court must "accept the well pleaded factual averments of the complaint as true, and construe these facts in the light most favorable to the [plaintiff]." *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987).  A pleading that offers labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.' *Ashcroft v. Iqbal*, 556 U.S. 662, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A motion to dismiss should be granted when, "viewed in this manner, it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir.1997) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988) (internal quotation marks omitted)).

IV.     ARGUMENT

> a. *42 U.S.C. § 1981 does not prohibit discrimination on the basis of association with terrorists.*

Plaintiffs' Complaint does not attempt to hide the true basis for Defendants' alleged discrimination: Fazeli's association with his brother, a terrorist and member of ISIS. The Complaint is specific, "[p]rior to August 2016, Dr. Fazeli's decision-making for standing orders was not questioned." Complaint ¶ 52. What is the significance of August 2016? The next paragraph tells us: on August 17, 2016 the Bangor Daily News reported on Fazeli's association with his brother, an ISIS terrorist fighting in Syria. ¶ 53. This article makes clear, Fazeli does not share his brother's radical beliefs. Nor does he practice Islam.

The implication is obvious. The discrimination described in the Complaint is, on its face, discrimination due to Fazeli's personal association with a terrorist. Plaintiffs attempt to backdoor their way into a § 1981 claim, but fail to plead any facts that indicate that racial discrimination occurred. The revelation of the article is not Fazeli's race, but his association with ISIS. And while it is irrelevant for a § 1981 claim, which must be based on race, it does not reveal his religion either, noting explicitly that he is not religious. According to the Complaint, all alleged discrimination flows from this. ¶ 56. Section 1981 does not restrict discrimination on the basis of ISIS connections and, as such, no claim under § 1981 is stated.

Plaintiff's attempts to reframe this as a race discrimination case fail to satisfy *Iqbal*'s pleading standards. "[T]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Plaintiffs offer no

6

more than conclusory statements that *racial* discrimination occurred. We are offered occasional claims that do no more than state that Defendants discriminated "because of [Fazeli's] race, ethnicity, and ancestry." ¶ 145. Nothing more than these barebones allegations, and the allegation that the Bangor Daily News article sparked the discrimination, support the § 1981 claim. Because these allegations do not satisfy the *Iqbal* pleading standards, and the article relates to Plaintiffs' association with terrorism and not with his race, Plaintiffs have failed to state a claim upon which relief can be granted and this Court must dismiss Count I.

> b. *Section 1981 does not provide for individual liability for Defendants Feick and DeMatteo.*

"[Section] 1981 provides for personal liability against supervisors, but not co-workers. *Wyss v. Gen. Dynamics Corp.*, 24 F. Supp. 2d 202, 211 (D.R.I. 1998). Nevertheless, Plaintiffs attempt to pursue Defendants Katrin Feick and Orlene DeMatteo, neither of whom was Plaintiffs' supervisor. Feick was Avita of Stroudwater's Executive Director and DeMatteo was its Resident Care Director. ¶ 29. Fazeli was an employee of Maine Geriatrics, LLC, of which he was the sole member, and not an employee of Defendants. ¶ 5, 33-34. In fact, when Plaintiffs allege that Fazeli was an "employee," they do so only in the context of the WPA. *See*, ¶ 25. The WPA statutory definition of employee has no bearing on application of federal law, § 1981. Moreover, Plaintiffs' legal assertions that they were employees even for the purposes of the WPA are not entitled to the presumption of truth. *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 10 (1st Cir. 2011) ("Unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth.").

> c.   *Plaintiffs do not allege the but-for causation demanded by § 1981.*

"To prevail [on a § 1981 claim] a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v.*

7

*Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Plaintiff's pleading does not meet this standard.

"Under this standard, a plaintiff must demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred. *Id.* at 1014. In *Comcast*, the plaintiff brought suit under § 1981. "Seeking billions in damages, the company alleged that Comcast systematically disfavored '100% African American-owned media companies.'" *Id.* at 1013. There, during contract negotiations, the Defendant "offered legitimate business reasons" for its allegedly discriminatory conduct. But, [the plaintiff] contended, these reasons were merely pretextual." *Id.* On these facts, the Supreme Court reversed the lower court's denial of a motion to dismiss and remanded for further proceedings. *Id.* at 1019.

Plaintiffs, however, plead a variety of causes for the adverse treatment suffered by them and never allege that, but for race, these actions would not have been taken. They allege the causes of their treatment are defamatory statements, two distinct instances of whistleblower retaliation, racial discrimination, and, implicitly, discrimination based on Fazeli's association with ISIS. *See*, ¶ 91 ("because of unlawful bias and retaliation"); ¶ 112 (defendants presented pretext for adverse action with false allegations set forth in a letter); ¶ 114-15 (defendants acted out of retaliatory animus in order to terminate Plaintiffs' contracts for protected whistleblower activity); ¶ 133 (steps taken to terminate Plaintiffs' after their resistance to use of anti-psychotics); ¶ 139, 141 (false and misleading statements made regarding Fazeli's inappropriate communications with residents, resident's families, and Defendants' employees to effect termination); ¶ 145 ("Northbridge Companies' actions were motivated by discriminatory animus towards Plaintiffs' [sic] and his practice because of his race, ethnicity, and ancestry in violation of Sex. 1981 as well as animus toward Plaintiffs for their protected activity under the WPA *and*

8

*advocacy for their patients*.") (emphasis added); ¶ 153 ("unlawful defamation" led Avita of Wells and Stroudwater Lodge to terminate Plaintiffs' contracts). This is not but-for causation. It is anything but. If Plaintiffs cannot allege that racial discrimination was a but-for cause of their injuries – and they cannot – they may not seek relief under 42 U.S.C. § 1981.

Nowhere in the Complaint do Plaintiffs' allege necessary but-for causation. Instead, the Complaint attributes the alleged wrongs to an array of unlawful motives. They do not say any of these was a but-for cause. This is insufficient to state a claim under the Supreme Court's § 1981 precedent and dismissal is therefore appropriate.

        *d.*        *Plaintiffs cannot bring a MWPA claim as they were not employed by Defendants.*

The First Circuit has handed down guidance to this Court as to the application of the Maine Whistleblower Protection Act to independent contractors like Plaintiffs. In the absence of binding authority from the Maine Supreme Judicial Court – and there is none – this Court is obligated to apply the First Circuit's holding to these facts and dismiss Count II.

In *Winslow v. Aroostook County*, the court reasoned that the MWPA could not apply to a non-employer, like Defendants. 736 F.3d 23, 30 (1st Cir. 2013) (affirming summary judgment for defendants where plaintiff was not a whistleblower under the MWPA). "The Supreme Judicial Court of Maine has held that [26 M.R.S. § 833(1)(A)], when read alongside the rest of section 833, 'unambiguously limit[s] the protection afforded by the [M]WPA to (1) employees (2) who report to an employer (3) about a violation (4) committed or practiced by that employer.'" *Id*. at 30, *quoting Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, 954 A.2d 1051, 1054 (Me. 2008).

In *Winslow*, the plaintiff was employed as the executive director of the Local Area I Workforce Investment Board ("LWIB"), where she reported to the Aroostook County

9

Administrator. *Id.* at 25. The County decided to transition the services provided by LWIB to a new agency which subsequently declined to hire plaintiff, who then brought suit. The First Circuit granted summary judgment for the new agency. Noting that "[b]y its terms, the MWPA only prohibits certain actions taken by an 'employer.'" The court "express[ed] doubt that [the new agency] ever was Winslow's employer within the meaning of the MWPA." *Id.* at 30, citing 26 M.R.S. § 833(1).

Consistent with the *Winslow* holding, this Court should dismiss Plaintiff's MWPA count as neither was ever an employee of Defendants. Plaintiffs, realizing the law dooms their MWPA claim, attempt to allege that they are "employees" for the purposes of this statute. *See*, ¶¶ 24-26. This Court need not credit these legal conclusions. *See Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 10 (1st Cir. 2011) ("Unlike factual allegations, legal conclusions contained within a complaint are not entitled to a presumption of truth."). This Court can fairly conclude, taking all factual allegations in the Complaint as true, that Plaintiffs are independent contractors who are not entitled to the MWPA's protections. See ¶ 33; (Plaintiffs, including Fazeli's LLC, entered into a medical services contract with Defendants); ¶ 157 (Plaintiffs given notice of termination of this contract). Independent contractors, like Plaintiffs, are not employees and, applying *Winslow*, are not entitled to bring an MWPA claim.

Plaintiffs direct this Court to one of its prior decisions, contrary to *Winslow*, which they assert supports an opposite result. *See* ¶ 24. This case, decided ten days before the First Circuit's decision in *Winslow*, correctly observed that, at that time, "there [was] no opinion or decision from the Maine Supreme Judicial Court, the Maine Superior Court, the First Circuit, or this Court…that construes [the MWPA definition of "employee"] in the context of whether an independent contractor performs a service 'under a contract of hire.'" *Allstate Ins. Co. v.*

10

*Chretien*, 2013 U.S. Dist. LEXIS 175458, *57 (D. Me. Nov. 5, 2013). The *Chretien* court proceeded to interpret the statute itself only after concluding there was no authority on the question. *Id*. It held that the statute did cover an independent contractor. *Id.* This Court should decline to follow *Chretien* and instead follow *Winslow*, as the *Chretien* court's conclusion that there was no higher authority on this question no longer holds and this Court is now bound to apply *Winslow*.

     e.     *Defendants are privileged at common law to interfere with contracts of an "integrated enterprise."*

"Maine has recognized a conditional privilege for statements within an employment relationship, such as reviewing another employee's qualifications[.]" *Gavrilovic v. Worldwide Language Res., Inc*., 441 F. Supp. 2d 163, 183 (D. Me. 2006), *citing Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me. 1989). Under Maine law, "[a] conditional privilege protects against liability for defamation when 'society has an interest in promoting free, but not absolutely unfettered, speech.' Whether a conditional privilege exists is a question of law." *Morgan v. Kooistra*, 941 A.2d 447, 455-56 (Me. 2008) (citation omitted).

Insofar as Plaintiffs allege that an employment relationship existed between them and Defendants, this contention should be applied against them and the alleged defamation should be analyzed in the employment context. If this is done, and *Gavrilovic* is applied, Defendants' allegedly defamatory statements, which were purely internal communications related to Plaintiffs' performance, are plainly privileged.

The doctrine announced in *Gavrilovic* is also easily extended to internal corporate communications regarding the contractual relationship with an external medical services provider like Plaintiffs. First, the communications are undoubtedly internal. Plaintiffs go into striking detail on this question that removes from doubt the integrated nature of Defendants. "At

11

all times material to this Complaint, Northbridge Companies was an integrated enterprise with Stroudwater Lodge, Avita of Stroudwater, Avita of Wells, namely Northbridge had shared ownership, shared management, integrated operations, and centralized control of labor relations." ¶ 28. Plaintiffs leave no room with this allegation to doubt the internal nature of the allegedly defamatory communications described in the Complaint, which were entirely among employees of Defendants.

Second, society plainly has "an interest in promoting free, but not absolutely unfettered, speech" in the context of assisted living and memory care facilities' selection of medical staff. These facilities best serve their residents when they are able to provide them superior medical care. This is an especially important role for memory care facilities, where patients are less able to make their own, informed decisions regarding care providers. Public policy supports a privilege for internal communications regarding the competence of these providers as it enables facilities to take realistic looks at the provision of these services and freely and internally communicate regarding their conclusions. *See* ¶ 160 (admitting that Maine law secures free choice of doctors for assisted living facility residents).

Because the allegedly defamatory communications are privileged, Count III must be dismissed.

A similar privilege exists at common law for tortious interference. It is well established in other jurisdictions, though not yet reached by a Maine court in a reported decision, that the economic interest privilege protects the sort of conduct alleged in Count IV of the Complaint. The Restatement Third of Torts states that "[c]onduct that otherwise would subject a defendant to liability under this Chapter is privileged if it consists of…lawful and good-faith efforts to

12

protect an economic interest in the contractual relationship at issue.[3] Restatement (Third) of Torts: Liability for Economic Harm § 20. The comments to this section indicate that "[c]ourts have long recognized a privilege that allows interference with a contract to protect a party's economic interest in the transaction at issue." *Id.* Comment *d*. Reporter's notes go further, stating that "[t]he privilege discussed in Comment *d* has often been invoked to protect interference by a parent corporation with the contracts of its subsidiaries." *Citing, Waste Conversion Systems, Inc. v. Greenstone Industries*, Inc., 33 S.W.3d 779 (Tenn. 2000) (collecting cases); *Boulevard Assocs. v. Sovereign Hotels*, Inc., 72 F.3d 1029 (2d Cir. 1995) (Connecticut law).

Defendants' conduct fits well within this privilege. As the allegations in Paragraph 28 make plain, Defendants are an integrated operation. Communications between them are perhaps even closer than those between a parent and subsidiary corporation, as contemplated by the Restatement comment. The common law protects this type of privilege and dooms Plaintiffs' tortious interference claim, contained in Count IV.

## V. CONCLUSION

For these reasons, Defendants' Motion to Dismiss should be granted and Plaintiffs' Complaint should be dismissed in its entirety against all Defendants.

---

[3] Maine courts frequently refer to the Restatement (Third) of Torts: Liability for Economic Harm. *See, e.g. McLaughlin v. Emera Maine*, 2016 Me. Bus. and Consumer LEXIS 26, *8 (Me. Bus. and Consumer Ct. Feb. 25, 2016).; *Eye Care & Eye Wear Ctr. Of Me. v. Enables It*, 2015 Me. Bus. and Consumer LEXIS 21, *6, *8 (Me. Bus. and Consumer Ct. Nov. 16, 2015); *Fortunato v. Specialized Bicycle Components, Inc.*, 1997 Me. Super. LEXIS 355, *4-5 (Me. Super. Ct. Nov. 19, 1997).

<div style="margin-left: 40%;">

Respectfully Submitted,

NORTHBRIDGE STROUDWATER LODGE II, LLC; NORTHBRIDGE STROUDWATER ASSISTED LIVING, LLC D/B/A STROUDWATER LODGE; NORTHBRIDGE AVITA STROUDWATER II, LLC; AVITA STROUDWATER LLC D/B/A AVITA OF STROUDWATER; NORTHBRIDGE AVITA WELLS II, LLC; AVITA WELLS, LLC D/B/A AVITA OF WELLS; NORTHBRIDGE COMPANIES; KATRIN FEICK, & ORLENE DEMATTEO,

By their attorneys,
JACKSON LEWIS P.C.,

</div>

Date: November 6, 2020.   By:   /s/K. Joshua Scott
　　　　　　　　　　　　　　　　K. Joshua Scott, ME Bar No. 005282
　　　　　　　　　　　　　　　　100 International Drive, Suite 363
　　　　　　　　　　　　　　　　Portsmouth, NH 03801
　　　　　　　　　　　　　　　　603.559.2700 | Main
　　　　　　　　　　　　　　　　Joshua.scott@jacksonlewis.com

<u>Certificate of Service</u>

　　　I hereby certify that on this 6th day of November, 2020, copies of this pleading were provided opposing counsel of record via the Court's electronic filing system.

Date: November 6, 2020　　　　　　/s/K. Joshua Scott
　　　　　　　　　　　　　　　　K. Joshua Scott

4821-1477-4480, v. 4