UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| JABBAR FAZELI, MD & MAINE GERIATRICS, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>NORTHBRIDGE STROUDWATER LODGE II, LLC; ET AL.,<br><br>            Defendants. | Docket No. 2:20-cv-00350-JDL |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT

### I.    Fraud Must Be Pled with Particularity.

In their Opposition to Defendants' Motion to Dismiss, Plaintiffs admit that their "Complaint alleges that Defendants' tortious interference involved fraud, misrepresentation, and defamation." Opp. at 19. Plaintiffs' admission demands that this Court hold the portions of the Complaint which allege fraud – Count IV – to the stringent pleading standards of Fed. R. Civ. P. 9(b). It is well known that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* "[U]nder Rule 9(b), appellants must state the who, what, where, and when of the allegedly misleading representation with particularity." *Ezell v. Lexington Ins. Co.*, 926 F.3d 48, 51 (1st Cir. 2019) (Souter, J.) (quotation omitted). Plaintiffs make no effort to do this, as such dismissal is proper. *Wayne Invest., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 14 (1st Cir. 1984)

It is enough that Plaintiffs now admit that their Complaint alleges fraud to subject them to the stringent standards of Rule 9. *River City Towing Servs. v. W. R. Grace & Co.-Conn. & Grace Div.*, 2006 U.S. Dist. LEXIS 103591, at *13 (M.D. La. Sep. 14, 2006) (requiring plaintiff to

plead fraud with particularity where fraud was first alleged in opposition to motion to dismiss). Further, courts recognize that tortious interference claims based on fraud must be pled with particularity. *See, Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 734 (N.D. Ill. 2018) ("Indeed, Rule 9(b) heightened pleading requirements apply to intentional interference claims when the claim alleges the defendant engaged in 'fraudulent conduct'"); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024, 1033 (N.D. Cal. 2011) ("To the extent [the plaintiff] seeks to base the tortious interference claim on fraud, it must re-plead that fraud with particularity under Rule 9.").

In order to plead Count IV with particularity, Plaintiffs would need to state "the who, what, where, when, and when" of the alleged fraud." *See, Ezell* at 51. They do not. Their tortious interference claim, which they admit alleges fraud, centers on the allegation that "Defendants tortuously interfered with Plaintiffs' advantageous economic relationship with their patients." Complaint at ¶ 171. Plaintiffs fail to support this claim with the specific allegations that Rule 9 requires. Because the allegations are insufficient to support the tortious interference by fraud claim, dismissal of Count IV is required.

## II.   Plaintiffs Fail to Allege But-For Causation.

Plaintiffs' argument is uncompelling on the question of their failure to plead the necessary but-for causation for their 42 U.S.C. § 1981 claim. Plaintiffs direct the Court's attention immediately to what they assert is their allegation of but-for causation, Paragraph 195 of their Complaint. The problem is that this paragraph is not what Plaintiffs wish it were. Here is what Plaintiffs offer, "Defendants terminated Plaintiffs' contracts and engaged in other discrimination against Plaintiffs because of Dr. Fazeli's race, ethnicity, and ancestry." Opp. at 8; Complaint at ¶ 195.

2

This is not but-for causation. It alleges, variously, that discrimination was caused because of Fazeli's race, because of his ethnicity, and because of his ancestry. Never do Plaintiffs allege which of these was the basis for the alleged discrimination or if each independently is a but-for cause of the alleged discrimination. "To prevail [on a Section 1981 claim], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (differentiating between Title VII "motivating factor" and the § 1981 "but-for" requirement). Plaintiffs must do the same for other causes of the discrimination as well, here ethnicity and ancestry. Because of the ambiguity in their pleading as to the basis for the discrimination, whether that be race, ethnicity, or ancestry, Plaintiffs fail to adequately plead but-for causation.[1]

Plaintiffs also fail to satisfy *Iqbal* pleading standards which require them to plead but-for causation beyond bare labels and conclusions. *Comcast Corp.* at 1019, *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (noting that a § 1981 plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' under the but-for causation standard."). Plaintiffs point to a purported allegation of but-for causation. Complaint at ¶ 195. But this allegation does not satisfy Rule 8 as "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal* at 678 (citation omitted). Paragraph 195 offers no more than a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" which "do[es] not suffice." *Id.* Because

---

[1]  It is plain on the face of the Complaint that the basis for the alleged discrimination was Fazeli's association with Adnan Fazeli, a known terrorist, and with the Islamic State of Iraq and Syria, which is recognized by the Department of State as a Foreign Terrorist Organization. *See*, https://www.state.gov/foreign-terrorist-organizations/.

Plaintiffs have failed to allege that any single protected category was a but-for cause, their Section 1981 count cannot survive.

### III.   MWPA Does Not Apply to Independent Contractors.

The plain language of the Maine Whistleblowers Protection Act (MWPA) does not provide relief to non-employees such as Plaintiffs. Plaintiffs in this case are a limited liability company and its sole member. Complaint at ¶¶ 4-5. Maine Geriatrics, LLC contracted with some of Defendants to provide medical services at their respective locations. Complaint at ¶¶ 33-34. Neither Maine Geriatrics nor Fazeli were ever employees of Defendants either under the plain language understanding of the term or, more importantly, under the statutory definition.

"'Employee' means a person who performs a service for wages or other remuneration under a contract of hire, written or oral, expressed or implied, but does not include an independent contractor engaged in lobster fishing." 26 M.R.S. § 832. The relevant consideration here is whether Plaintiffs performed under "a contract of hire" with Defendants.

Maine law contains a similar definition of employee as that in the MWPA within its Workers' Compensation Act. 39-A M.R.S. § 102(11)(A) ("'Employee' includes…every person in the service of another under any contract of hire, express or implied, oral or written"). The law on this issue is settled: the "control test" is appropriate where the purported relationship was governed by contract. *See, Bourette v. Dresser Industries, Inc.*, 481 A.2d 170, 173 (Me. 1984) ("*In the absence of a contract*, express or implied, the control test is unnecessary.") (emphasis added); *see also, Venegas v. Global Aircraft Serv.*, 2016 U.S. Dist. LEXIS 130164, *56 (D. Me. Sep. 23, 2016) (noting that "the 'right to control' test…is likely the test for state law claims" requiring determination whether a worker is an employee or independent contractor under state minimum wage law) (citing *Murray's Case*, 130 Me. 181, 186 (1931)). In *Murray's Case*, the

Law Court held that an independent contractor was not under a "contract of hire" for purposes of the Workman's Compensation Act. *Id.* at 184; *see also, Michaud v. Charles R. Steeves & Sons, Inc.*, 286 A.2d 336, 337 (Me. 1972) (recognizing that "whether [plaintiff] was employed as an employee or as an independent contractor" is at issue where plaintiff shows he was working under "a contract of hire"). This Court should credit the Legislature's decision to incorporate the language used in the Workman's Compensation Act and should apply that interpretation.

Contrary to Plaintiffs' assertions, there is no evidence of legislative intent to depart from established Maine case law's exclusion of independent contractors from the definition of an "employee" "who performs a service for wages….under a contract of hire[.]" Plaintiffs can point to no piece of legislative history which supports their interpretation or indicates any intent on the part of the Legislature to include non-lobster independent contractors within the MWPA.

The act Plaintiffs point to, An Act to Make Corrections of Errors and Inconsistencies in the Laws of Maine is clear that it merely corrects "technical errors and inconsistencies in the laws of Maine[.]" 26 M.R.S. § 832(A) (Emergency preamble). This reveals as false Plaintiffs contention that the Legislature intended to narrow the independent contractor exemption to just those engaged in lobster fishing. The purpose of the Act reveals that instead of narrowing an existing exemption, the Legislature intended throughout that the clause would read as it reads now: as an explicit protection for Maine lobstermen. It is entirely consistent with the text of the statute to conclude that the Legislature intended the statute to read according to its plain language: that employee means only those who perform a service for wages under a contract of hire and that that language cannot be interpreted to include lobstermen.[2]

---

[2] That the Maine Legislature included special language on behalf of an industry critical to the identity and economy of this state is unsurprising and cannot be interpreted as an indication that stricter treatment is reserved for other industries. *See,* 1 M.R.S. § 229 (lobster is the official state crustacean of Maine); 29-A M.R.S. § 456-A (requiring the Secretary of State to issue lobster license plates upon application); *State v. Dodge*, 117 Me. 269, 273, 104 A. 5, 7

## IV.     Plaintiffs Mischaracterize Defendants' Arguments Regarding Defamation.

Plaintiffs mischaracterize Defendants' argument regarding their conditional privilege against liability for defamation. They appear to be confused by Defendants' argument that they, as an "integrated enterprise" (including Defendants-employees Feick and DeMatteo), are privileged to communicate amongst themselves regarding the parties' contractual relationship. Defendants do not argue that Plaintiffs were employees of Defendants. They were not, and their employment status, or lack thereof, is irrelevant to Defendants' privilege. The employment relationship that is relevant here is between Feick and Dematteo, on one hand, and the remaining Defendants, on the other. This relationship is not disputed.

Plaintiffs point to a number of paragraphs of their Complaint that allege that Plaintiffs knowingly communicated false information, but these paragraphs only allege that the communication was knowing. They do not allege that any Defendants knew or should have known that what they said was false. They do not even allege with any specificity what the content of these communications was. Even if Plaintiffs prove all of their allegations, they will not have proven that Defendants knew or should have known of the falsity of their statements and as such cannot defeat the privilege.

## V.     Defendants do not Ask this Court to Create a New Common Law Rule.

Plaintiffs misrepresent Defendants' argument regarding the economic interest privilege. Defendants do not ask this Court to "create a common law rule in Maine." See Opp. at 17. The

---

(1918) ("This court takes judicial notice that the lobster fisheries is one of the great industries of the State of Maine. It is a part of the sea and shore interests of the State that has been the subject of constant investigation by the law making power for nearly a century, and year by year as the legislature has convened the attention of the representatives has been enlisted in the direction of the best means of fostering the industry and protecting the State against means and methods calculated to impair it."); *Ocean Lobster Co. v. M. & S. Weiner Bros.*, 1996 Me. Super. LEXIS 89, *5-6 (Me. Super Ct. March 18, 1996) ("Maine has a particular interest in protecting an industry that is important to the State's economy. Not only is the harvesting and marketing of lobster important to Maine…").

economic interest privilege exists at common law. The economic interest privilege is broadly recognized as within the common law, and this court is empowered to apply it here.[3]

Plaintiffs also, bizarrely, argue that "[t]here is no evidence of a parent-subsidiary relationship in this case much less evidence that any of the Defendant facilities were wholly owned subsidiaries of another." *Opp.* at 18. This is in complete opposition to their allegations in the Complaint, which this Court must accept as true. The Complaint alleges that, "[a]t all times material to this Complaint, Northbridge Companies was an integrated enterprise with Stroudwater Lodge, Avita of Stroudwater, Avita of Wells, namely Northbridge has shared ownership, shared management, integrated operations, and centralized control of labor relations." Complaint at ¶ 28. It is apparent that Plaintiffs wish to move away from this allegation upon realizing it dooms their defamation and tortious interference claims. They may not do so by ignoring what they plainly alleged in the Complaint.

Plaintiffs assert that the tortious interference count must survive as a claim related to Defendants' alleged interference with Plaintiffs' relationship with patients. The fact is that patients in droves chose to abandon Plaintiffs to seek superior care. *See, Memo. in Support of M.T.D.* at 4-5. Plaintiffs go out of their way to allege in the Complaint that, "[u]nder Maine law, patients in an assisted living facility have the right to choose any doctor available…" Complaint at ¶ 160. Where public policy favors free patient choice of physicians, Defendants cannot be liable for its residents' exercise of their legal rights, especially where Defendants "purposefully" included language "about residents' right to any provider of their choosing." *Id.* at ¶ 162.

---

[3] Defendants cite to this rule in the Restatement (Third) of Torts: Liability for Economic Harm. This volume is relied upon by Maine courts for the articulation of common law rules. *See Memo in Support of M.T.D.* at 13, n. 3.

Respectfully Submitted,

NORTHBRIDGE STROUDWATER LODGE II, LLC; NORTHBRIDGE STROUDWATER ASSISTED LIVING, LLC D/B/A STROUDWATER LODGE; NORTHBRIDGE AVITA STROUDWATER II, LLC; AVITA STROUDWATER LLC D/B/A AVITA OF STROUDWATER; NORTHBRIDGE AVITA WELLS II, LLC; AVITA WELLS, LLC D/B/A AVITA OF WELLS; NORTHBRIDGE COMPANIES; KATRIN FEICK, & ORLENE DEMATTEO,

By their attorneys,
JACKSON LEWIS P.C.,

Date:   December 11, 2020.       By:   /s/K. Joshua Scott
                                        K. Joshua Scott, ME Bar No. 005282
                                        100 International Drive, Suite 363
                                        Portsmouth, NH 03801
                                        603.559.2700 | Main
                                        Joshua.scott@jacksonlewis.com

Certificate of Service

I hereby certify that on this 11th day of November, 2020, copies of this pleading were provided opposing counsel of record via the Court's electronic filing system.

Date:   December 11, 2020.             /s/K. Joshua Scott
                                        K. Joshua Scott

4825-7384-8019, v. 3

8